Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff entered into a contract with the United States to construct a pier, causeway, and inner wharf at the Charleston Navy Yard. A part of the work ■ consisted in the sinking of cylinders to be filled with concrete, for which borings had been made to determine the depth to which the cylinders or caissons would be sunk to reach the marl or firm clay in or upon which they were to rest. The results of these borings were shown to bidders, along with the plans and specifications.
After the contract was made it was discovered that the depth of the marl was not uniform and that it dipped abruptly. This condition rendered it desirable to more accurately determine the average depths to which the cylinders would be sunk and a board was convened for that purpose, which found that the cylinders would have to go deeper *393 than the original contract required. This board estimated the cost of the additional work, made certain changes in the plans and deductions from the contract price on account of suggested omissions, and a supplemental contract was executed by the parties covering the extensions of work and the omissions to be made from the original contract. The supplemental contract fixed the price for the additional depth of cylinders, which, according to the supplement to the specifications, were to extend at least 4 feet into firm clay or marl, but it was also understood that the average additional depth to which the caissons were to be driven should not exceed 5.1 feet.
Later it was determined to be necessary, on account of the bottom formation and its dip, to sink the caissons or cylinders deeper than the supplemental contract required, and another board was convened to ascertain this additional depth and to fix the amount of compensation therefor. This board reported that the depth would be 5.1 feet additional to that specified in the- supplemental contract, and, after recommending certain omissions from the contract work, reported that the net amount to be paid plaintiff for the cylinders carried to the proposed new depth would be $13,131.05. A controversy arose between the parties over the sum that should be paid, and the plaintiff declined to sign a proffered supplemental contract providing for the additional work for the sum above stated. It expressed a willingness, however, to do the work, accept the sum named as part payment, and leave the question of amount open for future adjustment. The plaintiff was notified that the department would treat the matter as “ a change order ” and that it could proceed with the work without a supplemental contract. This the plaintiff did, and the work was completed in June, 1916. When the matters came on for final settlement the defendant’s officers in charge contended that the plaintiff should accept the sum of $13,131.05 as the proper compensation for the additional work, and should be charged with $3,275 as liquidated damages under the terms of the contract, and they insisted .that the plaintiff execute a final release such as is contemplated by the contract.
*394 The plaintiff took issue with these contentions, but it was finally agreed that the plaintiff should execute what was designated as a qualified release, whereby, for a stated consideration, the plaintiff released the defendant from any and all claims and demands growing out of the contract and any modification or change therein upon payment of the amount admitted by defendant to be due, but reserving certain rights of action as below stated. The release was accordingly executed, and the balance found due, something in excess of $16,000, was paid to the plaintiff. The release provided, however, that it should “ not extend to or include the claim of the contractor for additional compensation over and above that allowed by the Government for and on account of sinking the cylinders beyond the depth specified ” — in the supplemental agreement and specifications thereto — “ and other work and expense incidental to such additional depth.” This reservation applies to the 5.1 feet additional to the 5.1 feet mentioned in the supplemental agreement. The Government having allowed $13,131.05 as compensation, the question is what additional compensation, if any, over and above that sum should be paid for the sinking of' the cylinders the 5.1 feet additional depth, and other work and expense incidental to such additional depth. The petition presents the question as stated.
There is nothing in the case calling for an application of the principles decided in the Christie Case, 237 U. S., 234, Hollerbach Case, 233 U. S., 165, Atlantic Dredging Co. Case, 53 C. Cls., 490, or similar cases. No misrepresentation was made nor information withheld. The borings as made were submitted and their accuracy is not disputed. They did not show that the marl broke or dipped abruptly at or near the places where the cylinders were to be sunk, and there is nothing to show that this information was in the possession of the officer in charge who made the contract or of the officers or agents who made the borings. As has been stated, new borings were made and the results were covered into a supplemental contract executed by the parties. The provision in the latter that the additional depth would not exceed 5.1 feet was evidently intended for the contractor’s *395 benefit, because the price of carrying down the cylinders had been stated in the supplemental contract, and it was proper enough that the limit of depth which would be required for that price should be stated. The release states the claim that was reserved from its operation and the question is as above stated. If called on to decide from the evidence before it the total cost of sinking of the cylinders and doing the work incident thereto the court could not determine it, with any degree of satisfaction. The figures furnished in a statement or estimate by plaintiff or its witnesses is plainly erroneous, and cover a much longer period than would be allowable. Nor is the evidence as satisfactory as should have been adduced upon the question of the additional compensation that should be allowed. This additional compensation has been ascertained, however, and is shown in Finding IX.
A second question reserved in the release was whether the plaintiff was chargeable with liquidated damages. We think clearly not. The contract period for completion had been extended to January 31, T916. When that time had expired, the question of the new additional depth of 5.1 feet had not been determined by the board, nor the amount of compensation allowable for it. No new or supplemental agreement was executed, but in April the plaintiff was directed to proceed as upon a “change order.” Upon what theory the plaintiff was chargeable -with liquidated damages for delay in completing the work that was not even included' in the contract, or the supplement thereto, is not made plain. The plaintiff was duly authorized to do this work, and the time for doing it was not agreed upon or covered by former agreements. The plaintiff should recover the amount deducted as liquidated damages, as shown by Finding X.
Judgment for plaintiff in the sum of $30,883.95. And it is so ordered.
Gkaham, Judge; Hay, Judge; Downey, Judge; and Booth, Judge, concur.