Whaley, Chief Justice,
delivered the opinion of the court:
Plaintiff entered into a contract with the defendant on June 29, 1929, for the consideration of 29.4 cents per cubic yard, place measurement, to furnish all labor and materials and perform all work required for dredging Maumee Eiver and Maumee Bay Channel, Lake Erie, in accordance with specifications, schedules, and drawings, made part of the contract, the work to be completed within a time calculated according to a prescribed formula, no work to be required during the period between December 15 and April 1, inclusive, which represented the closed season for navigation,
The specifications stated that the contour of the channel was improved to 21 feet depth and 400 feet width in 1913-1915, and that material to be removed was thought to be silt, clay and sand, but the bidders were expected to examine the work and decide for themselves as to its character and make their bids accordingly as the United States did not guarantee the accuracy of this description. The specifications further stated that the price per cubic yard covered the cost of removal and disposition of all material encountered except ledge rode. It was further provided that the plant should be of sufficient size to meet the requirements of the work, subject to the approval of the contracting officer.
The channel to be dredged began in the Maumee River in the city of Toledo at the Fassett Street Bridge and extended some 15 miles therefrom through Maumee Bay out into Lake Erie. The projected improvement of the channel contemplated a width of 400 feet throughout its length *10 with a depth of 21 feet below the datum of 570.8 feet mean tide, New York Harbor. Plaintiff made no investigation at the site of the character of the material to be removed before signing the contract. ■ ...
Plaintiff entered upon the work on section 1 which was situate between the Fassett Street and New York Central Railroad bridges. The equipment used was a clamshell dredge which was incapable of removing the virgin material which was located at a point in that stretch of the river and which had not been removed previously when the channel was deepened to 21 feet. This virgin material was composed of clay and extended about 1,800 feet along the east bank of the river downstream from Fassett Street Bridge, above the 21-foot depth and within the 400-foot width. It was afterwards removed by the contractor and the contract price of 29.4 cents per cubic yard was paid to it for the 13,171 cubic yards removed.
Plaintiff complained to the contracting officer that this material being above the 21-foot mark and composed of compact clay was not within the provisions of the 'contract. The contracting officer refused to pay anything more than the contract price for it and held that its removal was within the terms of the contract and an appeal was taken to the Chief of Engineers and the Chief of Engineers affirmed the contracting officer’s ruling.
On November 6, 1929, plaintiff sublet to the Standard Dredging Company the remainder of all work on the cop-tract, including the virgin material in Section 1, at 22 cents per cubic yard, place measurement, on the terms and conditions as set out in the contract between the plaintiff and the defendant.
The work was completed and plaintiff received payment from the defendant on the basis of 29.4 cents per cubic yard removed and payment was made to the subcontractor by the contractor for work performed by it. Plaintiff received $456,918.04 for 1,554,143 cubic yards removed, and paid to its subcontractor $298,965.04 for 1,358,932 cubic yards. On the yardage dredged by its subcontractor the plaintiff realized a profit of $100,560.97, being 1,358,932 *11 cubic yards at 7.4 cents. With its own forces plaintiff removed only 195,211 cubic yards.
Plaintiff claims that it is entitled to damages in the amount of $104,105.94 for loss resulting from misrepresentations made in the contract and specifications as to the extent of previous dredging and the character of material within the project limits, certain papers being in the possession of the defendant and not disclosed to plaintiff. Its second claim is for recovery of $27,444.90 for allowable overdepth dredging of 93,350 cubic yards performed under the contract for which it has not been paid.
The contention is made that certain drawings, which the defendant furnished plaintiff on which to base • its ■ bid, were not all the drawings which were in the possession of the defendant and if they had been made available to plaintiff they would have made a material difference in its bid. The plaintiff relies on the cases of Hollerbach & May v. United States, 233 U. S. 165, and Christie v. United States, 237 U. S. 234. These cases are not in point.
When the Engineers Office was established in Detroit certain papers which had been in the Cleveland office were transferred to Detroit but not all of them.
Among those missing were the drawings showing the depths, point by point, that had been reached in the dredging of 1913-1915, “after-dredging” drawings as they have been termed. They disclosed depths in the Fassett Street-New York Central bridge area that were less than 21 feet in depth. A bare disclosure of less than 21 feet does not mean that below that elevation was a stratum of virgin clay. It is not even intimated that, were the material above 21 feet in that territory silt or sand, it would have been outside the contract. The complaint is that it was virgin material, as it turned out to be, clay, and therefore outside the contract. Clay in the bed of this river would, of course, be virgin material, but the specifications stated: “The material to be removed is believed to be silt, clay, and sand. * * [Italics ours.] This is equivalent to saying that a part of the material is believed to be comparatively recent deposits and other material of a virgin char *12 acter. If there be inconsistency in the specifications, the inconsistency would have been resolved by the bidder examining the work and deciding for himself. The specifications state:
The material to be removed is believed to be silt, clay, and sand, but bidders are expected to examine the work and decide for themselves as to its character and to make their bids accordingly, as the United States does not guarantee the accuracy of this description.
There is no suggestion that the after-dredging drawings of 1913-1915 disclosed the nature of the material above 21 feet and we may not assume that they would indicate the presence of virgin clay to the bidder. The presence of clay was in fact suggested in the specifications. At best the drawings would merely corroborate the suggestion of the presence of clay above 21 feet.
In prior dredging an elevation datum of 572.8 feet above mean tide New York Harbor had been used, with a depth of 23 feet. This means a dredged level of 549.8 feet. In the instant dredging a datum of 570.8 feet was used, with depth of 21 feet. This means also a dredged level of 549.8 feet.
The contention of plaintiff is that if the dredging in 1913-1915 was from a datum of 572.8 feet for a 21-foot channel and not from a datum of 570.8 feet, the result was a 19-foot channel instead of a 21-foot channel and therefore plaintiff would have to encounter virgin material to a depth of 2 feet in this area. However, upon examination of the drawings this is not correct. The contract given out in 1913-1915 called for a 23-foot channel below the datum of 572.8 feet which is identical with the instant specifications calling for a 21-foot channel below the datum of 570.8 feet. Even if these after-dredging drawings had been furnished, plaintiff would not have obtained the information necessary to determine how much, if any, virgin material there was to be dredged. In plaintiff’s brief it is admitted that the contracting officer was not guilty of “bad faith” but it claims defendant was supressing information which, if it had been furnished to plaintiff, would have *13 materially altered the bid made by plaintiff and therefore plaintiff was misled.
As we have pointed out, there was no attempted concealment by an officer of the Government in not furnishing these drawings. In Midland & Improvement Co. v. United States, 58 C. Cls. 671, 683, 684, the court held:
* * * It is not to be presumed, and one may not, either under the Christie or Hollerbach case, simply show a different condition in some respects from that which the chart or blueprints of borings discloses, and rest his case upon the theory that the court must infer a misrepresentation. There must be some degree of culpability attached to the makers of the maps and charts, either that they were knowingly untrue or were prepared as the result of such a serious and egregious error that the court may imply bad faith.
It is true that there was a small section of the channel encountered by the plaintiff which had not been dredged previously to a 21-foot depth. All of the rest of this vast area, some 15 miles, had been dredged but had been filled in by material deposited by the Maumee Eiver and shoals which had accumulated subsequent to the previous dredging. In the specifications, section 14, it is specifically stated that the material which was to be encountered was believed to be silt, clay, and sand, and that the contractor was to remove and dispose of all material encountered except ledge rock. The material encountered by plaintiff was silt, clay, and sand, and under the contract the channel was to be dredged to a 21-foot depth and a 400-foot width. In addition, plaintiff was warned to make his own examination as the defendant was not guaranteeing the accuracy of the description. Irrespective of this, plaintiff did not make an examination but made its bid, undertook the work, and ran into a situation which could easily have been discovered if a proper inspection of the channel had been made. The real trouble was that plaintiff’s dredges were not of the kind to handle the virgin material of sticky clay. They were clamshell dredges. We have mentioned this situation although there is no claim made by plaintiff for dredging *14 this part of the channel. It received payment for the amount of material removed under the terms of the contract.
The loss, if any, which plaintiff incurred, was dne primarily to the poor equipment at the site of the work and the constant repairs which had to be made. When the subcontractor went to work with an hydraulic dredge, it had- no difficulty in completing the work.
The claim of the subcontractor’s loss for which the contractor is suing is without merit because the ground on which it is alleged was presented to the contracting officer before the subcontractor entered into its contract with the contractor and it was well known to the contractor that the contracting officer and the Chief of Engineers both believed that the hard material which plaintiff had encountered in Section 1 was strictly within the terms of the contract. If there was fault, or misrepresentation, it cannot be assigned to the United States. There can be no recovery either on the part of the contractor or the subcontractor on this contention.
Plaintiff’s claim for certain over-depth dredging is likewise not tenable. The contract provided for over-depth dredging where the predredging level was above 21 feet. Where the predredging level was already 21 feet or deeper there was no occasion for dredging at all, and as we understand it the claim covers instances where over-depth dredging was done in areas already down to 21 feet, although due to unavoidable inaccuracies of the dredging process. The “inaccuracies” referred to related to variations from levels required to be dredged to and not to variations from levels that were not to be disturbed. The contracting officer’s action was correct. There can be no recovery on this item.
The petition is dismissed. It is so ordered.
Madden, Judge; Jones, Judge; and Littleton. Judge, concur.
Whitaker, Judge, took no part in the decision of this case.