CARIBBEAN ENGINEERING COMPANY, Plaintiff and Appellant, v. MUNICIPALITY OF PONCE, Defendant and Appellee.

No. 8289. Argued November 21, 1941.—Decided February 25, 1942.

R. *Rivera Zayas* and *J. Velilla* for appellants. *F. M. Susoni,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

The Municipality of Ponce, with the cooperation of the Public Works Administration, called for bids for the furnishing and installation of water meters inclosed in cast-iron boxes for the aqueduct of that city. The Caribbean Engineering Co., being the successful bidder, entered into a contract with the municipality to do the work in question for $66,237. The controversy herein arose from the fact that in the specifications which were made a part of the contract, the municipality fixed the required amount of excavation at 1,500 cubic meters, whereas the plaintiff actually had to excavate 4,247.33 c. m. The unit price stipulated in the contract was 75¢ per cubic meter, but the plaintiff claimed payment for any work in excess of the amount originally stip-

ulated plus 20 per cent thereof, at the rate of $1.60 per cubic meter, which, according to the plaintiff, represented the cost of the work. The same thing happened with respect to the item of corporation cocks, the number of which was estimated in the specifications at 1,000 at the rate of $1.00 each, and then it became necessary to install 1,479, the plaintiff claiming the sum of $1.50 per cock.

The municipality refused to pay the amount claimed by the contractor but did pay the latter in accordance with the unit price fixed in the contract, whereupon the Caribbean Engineering Co. brought an action for damages in the District Court of Ponce, seeking to recover the difference between the amount paid by the municipality and the cost of the extra work done by the plaintiff in connection with the two items above mentioned, or the total sum of $2,219.23. The case was submitted to the lower court upon a lengthy stipulation of facts, to which we shall refer further on in this opinion, and the present appeal has been taken from the judgment dismissing the action with costs and attorney's fees. It is urged that the lower court erred in rendering a judgment at variance with the stipulated facts, in dismissing the action, and in adjudging the plaintiff to pay the costs and attorney's fees. The appellant discusses the first two assignments together, and we will also decide them jointly.

The principal ground relied on by the lower court for rendering judgment for the defendant is set forth in the opinion which it delivered in support thereof, as follows:

"From what we have just transcribed, it clearly appears that the plaintiff contractor, in entering into the said contract with the Municipality of Ponce, *waived any claim for damages, arising from any difference between the estimated amount of work and the work actually done.* (Instruction 7 forms part of the contract.)

"This, in our opinion, is sufficient to dismiss the action for damages, because, 'obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations.' (Section 1044 of the Civil Code, 1930 ed.)" (Italics supplied by the lower court).

Let us see whether there was any waiver. As all the instruments subscribed in this transaction were drafted in the English language, we will quote from them in that language. The contract entered into between the parties expressly provided that the call for bids, the proposals, the instructions to bidders, the construction regulations, and the specifications would form part of the contract, thus:

"ARTICLE 1: *Statement of work:* The contractor shall furnish all labor and materials, and perform all work required for the FURNISHING AND INSTALLATION OF WATER METERS AND CAST-IRON BOXES in Ponce, Puerto Rico, for the consideration of sixty-six thousand two hundred and thirty-seven dollars ($66,237.00) in strict accordance with the invitation; bid; instructions to bidders; construction regulations; specifications entitled SPECIFICATIONS FOR THE FURNISHING AND INSTALLATION OF WATER METERS AND CAST-IRON BOXES and the drawing mentioned in the specifications; *all which are made a part hereof."* (Italics ours.)

Article 2 reads as follows:

"ARTICLE 2: *Payments:* The OWNER agrees to pay the contractor for the complete work required by this contract at the prices agreed upon in this contract. Such payments shall be made from funds received from the sale of bonds or otherwise, from the United States of America by way of grant."

In the first instruction to bidders the following appears:

"1. EXAMINATION OF SITE.

"Bidders *must* examine the site of the work in order to obtain full knowledge of difficulties that might arise in the execution of the work." (Italics ours.)

In instruction 7 the bidders were advised as follows:

"7.—PREPARATION OF BID.

"Bidders must submit with their bids one set of the Instructions to Bidders, Construction Regulations, and Specifications, *which shall be considered as forming part of their bids.*

"Forms furnished shall be used, and strict compliance is necessary with the requirements of the invitation and these instructions. Special care should be exercised in the preparation of bids.

30

"*Bidders must make their own estimates of the facilities and difficulties attending the execution of the proposed contract, including local conditions, uncertainty of weather and all other contingencies.*

"All blank spaces in the bid form shall be carefully filled in, no alterations or additions in the wording of the bid being permitted.

"All bids having any condition or limitation added by the bidders will be considered informal and may be rejected.

"*The estimated quantities of work* that appear in the Proposal Form *are only approximate and bidders must determine for themselves the quantities of work that will be required and they shall assume all risks as to any variation in the quantities of the different classes of work actually performed, and they shall not make any claim for damages or loss of profits because of any difference between the quantities of the various classes of work given in the estimates for the purpose of bidding and the quantities of work actually performed. The contractor's compensation will be computed upon the basis of the actual quantities in the completed work; whether they be more or less than the quantities listed in the Proposal Form.*" (Italics ours.)

Paragraph No. 2 of the Specifications contains the following:

"2.—Scope of Work.—The extent and scope of work to be performed is described in these specifications, shown, noted or implied upon the accompanying drawings, supplemented by explanatory details, which will be furnished by the Owner, and may be stated as complete Furnishing and Installation of Water Meters and Cast-Iron Boxes for the Ponce Water Works.

"It is the intention of these specifications to describe definitely and fully the *character of all materials* and workmanship necessary to construct and completely finish the work described in accompanying sections of these specifications, and shall provide for and include all labor, transportation, tools, materials, machinery and equipment necessary." (Italics ours.)

To provide for any error in the documents of the contract, the following was inserted:

"7.—Errors and Discrepancies:

"The contractor will not be allowed to take advantage of any errors or omissions which may occur in the documents of the contract.

"Should any errors or discrepancies in the drawing and specifications become apparent to the contractor during the progress of the work, he shall immediately call them to the attention of the OWNER or his representative whose decision, *approved by the PWA Representative for Puerto Rico, shall be final and binding.*" (Italics ours.)

The work covered by the unit price was specified as follows:

"8.—WORK COVERED BY UNIT PRICE:

"The cost of furnishing all plant, labor and materials and the performance of all work necessary to complete each unit of work is understood to be comprised in the price paid for each unit."

Regarding any extra work it was expressly agreed as follows:

"13.—APPROVAL OF EXTRAS:

"The OWNER reserves the right to make, at any time, *changes in the plans and specifications* the same being subject to approval by the PWA Representative for Puerto Rico. No charge for any extra work or material will be allowed unless the same has been previously authorized in writing by the OWNER and approved by the PWA Representative for Puerto Rico.

"*In case that any changes in the plans and specifications may entail work not foreseen in the contract, this will be considered as extra work.*

"The OWNER with the approval of the PWA Representative for Puerto Rico, reserves the right to enter into a written agreement with the contractor to execute *such extra work* at prices to be mutually agreed upon, or to have same carried out on a cost plus basis or by any other method that the OWNER may decide, subject to the approval of the PWA Representative for Puerto Rico.

"14.—CLAIMS AND PROTESTS:

"If the contractor considers any work required of him to be outside the requirements of the contract, or considers any record or ruling of the inspectors as unfair he shall ask for written instructions or decision immediately, and then file a written protest with the OWNER. Due consideration will be given to such protest, and the decision of the P.W.A. Representative for Puerto Rico *will be final.*" (Italics ours.)

The plaintiff entitled its bid thus:

"ESTIMATED QUANTITIES OF WORK AND MATERIALS (APPROXIMATE) FOR THE FURNISHING AND INSTALLATION OF WATER METERS AND CAST IRON BOXES FOR THE IMPROVEMENT TO THE PONCE WATER WORKS."

It stated therein the following:

"BID (PROPOSAL). In compliance with the above invitation and the advertisement for bids, *and subject to all the conditions thereof,* the undersigned offers and agrees, if this bid be accepted within sixty (60) days from the date of the opening, to furnish *all plant, labor, and materials and perform all work required, at* the unit prices stipulated in this PROPOSAL, the total amount of the bid being sixty-six thousand two hundred thirty-seven dollars ($66,237), all within the time stipulated in paragraph 3 of the Specifications." (Italics ours.)

In closed its proposal by saying:

"The undersigned submits this bid with an entire knowledge of the kind, quality and *quantity* of the materials and workmanship required, and should it be accepted, will enter into a contract within fifteen (15) calendar days after being notified in writing of the acceptance of his bid." (Italics ours.)

All the above stipulations formed part of the contract in accordance with its terms. The question to be decided in this case is the scope of the last paragraph of instruction 7, *supra,* which, translated into Spanish, reads as follows:

"Las cantidades de trabajo estimadas que aparecen en 'The Proposal Form' son solamente *aproximadas* y los postores deben determinar *por sí mismo las cantidades que serán requeridas y ellos asumirán todos los riesgos en cuanto a cualquier variación en las cantidades de las diferentes clases de trabajo efectivamente realizado y (los postores) no harán reclamación alguna por daños o pérdidas de beneficios con motivo de cualquier diferencia entre las cantidades de las varias clases de trabajo dadas en el estimado para el propósito de la subasta y las cantidades de trabajo realmente llevadas a cabo.* La compensación del contratista será computada a base de las cantidades incluídas en la obra terminada, *aunque sean más o menos que las cantidades especificadas en el 'Proposal Form.'*"

The appellant maintains that the term "approximate," inserted in said paragraph 7 regarding the amount of work to be done, was intended by the parties to this litigation to cover only a 20 per cent excess over the amounts fixed in the specifications, in accordance with paragraph 9 of the stipulation submitted to the lower court for the determination of this case, and which reads as follows:

"9.—That the plaintiff called the attention of the municipality to said excess in the excavations and that on being requested to do such extra work at the unit price stipulated in the contract, he refused to comply with said request and filed a claim for the payment of all excavations exceeding by 20 per cent the amounts stated in the above-mentioned item as extra work at $1.60 per cubic meter. The 20 per cent set forth in excess of the estimated 1,500 c. m. represents the standard set up in this class of public works contracts, according to which the contractor is bound to execute up to a 20 per cent excess of the amount of work stated in the specifications at the same price per unit as that stipulated in the contract."

After having considered the contention of the appellant we are, however, of the opinion that, under subdivision 9 of the stipulations, *supra,* there was no agreement between the parties that the term "approximate" meant a 20 per cent excess of the amount of work stated in the specifications. The fact stipulated upon by the parties was that the Caribbean Engineering Co. had claimed payment for the work which exceded the amount stated in the specifications plus 20 per cent thereof. The meaning of said 20 per cent was then set forth, but it was not stipulated that the term "approximate," as used in the specifications, amounted to that 20 per cent. But even assuming that such was the import of subdivision 9 of the stipulation, the parties, under the special circumstances of this contract, could not restrict its scope without the intervention of the P.W.A. The contract in the present case, although entered into between the Caribbean Engineering Co. and the Municipality of Ponce, was subject at any time to the intervention and approval of the Public Works Administration, a federal agency. Thus

we see in the advertisement calling for bids the statement: "No bid *will be accepted or rejected without prior authorization and approval by the P. W. A. Representative for Puerto Rico.*" The following appears in the Instructions to Bidders: "3.—....Contract will not be awarded until bids have been *examined and passed upon* by the P. W. A. Representative for Puerto Rico.... 4.—The contract shall be supported by adequate surety or other bonds or security satisfactory to the *Administrator of the Federal Emergency Administration of Public Works,....* 14.—...*The contract documents will be subject to the approval of the Representative for Puerto Rico of the Federal Emergency Administration of Public Works,* and also to the approval of the Commissioner of the Interior of Puerto Rico." (Italics ours.)

So that, although the P.W.A. was not a party to the contract, the latter could not have been made without the intervention and approval of said federal agency. This is why we say that, as it was not stated in any of the papers making up the contract that the term "approximate," as used in instruction 7, *supra,* applied only to a 20 per cent excess over the amount of work fixed in the specifications, the parties can not, by stipulation, and without the intervention of the P.W.A., so restrict its scope.

We hold that the term "approximate" was not confined to the 20 per cent as defined in the stipulation, since the definition therein refers only to the standard adopted by engineers and contractors of public works. Courts can not, by interpretation, extend a stipulation so as to give it an effect beyond its terms and beyond what the parties intended. 60 C.J. 62, § 42. Moreover, if the theory of the appellant were to be adopted, what would be the purpose of the Municipality of Ponce in opposing plaintiff's claim in the present action? If it had agreed that the term "approximate" meant the 20 per cent alleged by the plaintiff, there would be no controversy whatsoever between the parties necessitating a determination by the courts.

■ The appellant maintains that the amount of work stated in the specifications constitutes a warranty on the part of the Municipality of Ponce, and that the ground of the cause of action lies on the erroneous assertions contained in the specifications, because by reason of the aforesaid warranty the appellant was misled into error when making its proposal. In its elaborate and extensive brief it insistently cites several cases decided by the Supreme Court of the United States, to wit: *U. S.* v. *Utah, N. & C. Stage Co.*, 199 U. S. 414; *Hollerbach* v. *U. S.*, 233 U. S. 165; *Christie* v. *U. S.*, 237 U. S. 234; *U. S.* v. *Spearin*, 248 U. S. 132; and *U. S.* v. *Atlantic Dredging Co.*, 253 U. S. 1. We have carefully considered the facts involved in those cases and we are of the opinion that the decisions rendered therein by our highest tribunal are not applicable to the facts in the case at bar. On the contrary, one of the cases, *Hollerbach* v. *U. S.*, shows how said court distinguished the cases which were covered by the doctrine upheld in the others from those in which the facts were similar to the ones involved in the case herein.

Let us analyze the last-cited case. Hollerbach brought suit against the United States for damages sustained in connection with a contract for repairs to a dam, on the ground that such damages would not have arisen if the facts stated in paragraph 33 of the specifications attached to the contract had been true. The Court of Claims, relying on the decision in *Simpson* v. *U. S.*, 172 U. S. 372, found against the plaintiff, and the latter took an appeal to the Supreme Court of the United States. It is stated in the opinion of the Supreme Court that the determination of the controversy hinged upon certain parts of the specifications and upon the findings of the Court of Claims. The specifications in question, which we will quote in English for the sake of a better comparison with those of the case at bar, read as follows:

"20. It is understood and agreed that the *quantities* given are *approximate only,* and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative,

in the same. *Bidders, or their authorized agents, are expected to examine the maps and drawings in this office, which are open to their inspection, to visit the locality of the work, and to make their own estimates of the locality and difficulties attending the execution of the proposed contract, including local conditions, uncertainty of weather, and all other contingencies.*

"  *       *       *       *       *       *       *

"3. Work to be done.... The present dam, a wooden crib structure, is 528 feet long between abutments and about 52 feet wide at its base. The expected depth of concrete work is shown on the blue prints, but it may be made greater, as the condition of the old timber may render it necessary. The work shall be carried out in sections, generally from 50 to 100 feet long, and no more of the old work shall be torn out than can be rebuilt in a few days in case of necessity. All the exterior surfaces of the concrete shall be faced with the facing described in paragraph 59, which shall be placed before the concrete below has set, and shall be smoothly finished off. *The dam is now backed for about 50 feet with broken stone, sawdust, and sediment to a height of within 2 or 3 feet of the crest, and it is expected that a cofferdam can be constructed with this stone,* after which it can be backed with sawdust or other material. The excavation behind the dam will be required to go to the bottom, and it is thought that a slope of 1 horizontal to 1.2 vertical will give ample room.

"  *       *       *       *       *       *       *

"70. Investigation. It is expected that each bidder will visit the site of this work, the office of the lockmaster, and the office of the local engineer and ascertain the nature of the work, the general character of the river as to floods and low water, and obtain the information necessary to enable him to make an intelligent proposal." (Italics ours.)

Specifications 20 and 70 in the *Hollerbach* case, *supra,* except for slight differences, are equivalent to instructions 1 and 7 in the case at bar, and specification 33 in the cited case is substantially the same as specification 2 in the instant case.

The findings made by the Court of Claims, in their pertinent part, read as follows:

"As the contractors proceeded with the work of removing the material behind the dam it was found that said dam was not backed with broken stone, sawdust, and sediment as stated in paragraph 33 of the specifications, but that said backing was composed of a soft slushy sediment from a height of about 2 feet from the crest to an average depth of 7 feet, and below that to the bottom of the required excavation said dam was backed by cribwork of an average height of 4.3 feet consisting of sound logs filled with stones."

The Court of Claims in its opinion said that if paragraph 33 of the specifications, *supra*, stood alone it would be a warranty of the material backing the dam; but it held that the cautionary provisions of paragraphs 20 and 70 required the claimant to inform himself of the condition of the backing of the dam and, therefore, paragraph 33 did not constitute a warranty, in accordance with the holding in the case of *Simpson* v. *U. S.*, *supra*. The Supreme Court of the United States distinguished the latter case, and then said:

"In this case the claimants rely upon the contract, read in the light of the findings of the Court of Claims. Turning to paragraphs 20 and 70 the Court of Claims justified its conclusion in that part of paragraph 20 which provides that 'quantities given are *approximate only*, and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. Bidders, or their authorized agents, are expected . . . . to visit the locality of the work, and to make their own estimates,' etc. The term '*quantities*' as used in paragraph 20 may doubtless refer to *estimates of the amount of different kinds of work which are specified in the contract.* We do not see how it could control the statement of paragraph 33, definitely made, *as to the character of the material back of the dam.* Pertinent parts of the paragraphs referred to would seem to be those which required bidders or their authorized agents to investigate for themselves and to visit the locality of the work to ascertain its nature and make their own estimates thereof. The specifications attached to the contract set forth the work to be performed in great detail, as to its nature and character, and many particulars as to manner and extent of the work to be done, the removal of old timber and material, etc., the general character of the river as to floods and low water, etc., and the difficulties attending the execution of the contract, *and as to all these*

*things the bidder was required by paragraphs 20 and 70 to make examination for himself and at his own peril.*

"In paragraph 33 the Government sets forth with particularity a description of the old dam, its length and width, and it was there added: 'The dam is now backed for about 50 feet with broken stone, sawdust and sediment to a height of within 2 or 3 feet of the crest,' etc. The specifications provided that the excavations behind the dam must be to the bottom. In the light of this specification, turn to the finding of fact, and we learn that the claimants, as they proceeded with the work, found that the dam 'was not backed with broken stone, sawdust and sediment as stated in paragraph 33 of the specifications,' and below seven feet from the top to the bottom there was a backing of cribbing of an average height of 4.3 feet of sound logs filled with stone. *Obviously, this made it much more expensive to do the work than if the representation inserted by the Government in the specifications of its own preparation had been true and only the character of material had been found which the specification unequivocally asserted was there.*

"A Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument. In paragrah 33 the specifications spoke with certainty as to a part of the *conditions* to be encountered by the claimants. True the claimants might have penetrated to seven feet of soft slushy sediment by means which would have discovered the log crib work filled with stones which was concealed below, but the specifications assured them *of the character of the material, a matter concerning which the Government might be presumed to speak with knowledge and authority.* We think this positive statement of the specifications must be taken as true and binding upon the Government, and that upon it rather than upon the claimants must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the Government as a basis of the contract left in no doubt. If the Government wished to leave the matter open to the independent investigation of the claimants it might easily have omitted the specification as to the *character* of the filling back of the dam. In its positive assertion of the *nature of this much of the work it made a representation upon*

*which the claimants had a right to rely without an investigation to. prove its falsity.* See *United States* v. *Stage Co.,* 199 U.S. 414, 424.'' (Italics ours.)

As may be seen, the *Hollerbach* case essentially decides two questions: (1) that the specifications, as to the quantities of work, were subject to verification by the contractor, inasmuch as under paragraphs 20 and 70 said quantities had been stated as being approximate, and (2) that paragraph 33 of the specifications concerning the nature of the ground, ''character of the material'' back of the dam, was a positive warranty from the Government to the contractor which the latter was not bound to investigate under paragraphs 20 and 70 of the specifications. The Supreme Court, therefore, reversed the decision of the Court of Claims and awarded the damages.

A similar doctrine was applied in *U. S.* v. *Utah, supra,* in which the contract stipulated that the contractor would be bound to carry the mail to and from two post offices and that said contractor might have to serve some 6,718 additional miles yearly, and afterwards the contractor was required to perform such work for four post offices with an additional run of 300,000 yearly. The court said:

''The contractor had a right to presume that the Government knew how many stations were to be served; it was a fact peculiarly within the knowledge of the Government agents and upon which, in the advertisement, it spoke with certainty. We do not think, when the statement was thus unequivocal, and the document was prepared for the guidance of bidders for Government service, that the general statement that the contractor must investigate for himself, and of non-responsibility for mistakes, would require an independent investigation of a fact which the Government had left in no doubt.''

In the case of *Christie* v. *U. S., supra,* the Supreme Court again made the same distinction as in the *Hollerbach* case. Three errors were charged against the Court of Claims which had decided an action for damages brought by a contractor. Only two of the assignments bear upon the question under

consideration, to wit: (1) the refusal of additional compensation by reason of misrepresentation in the specifications as to the materials to be excavated, (2) the refusal of certain compensation for material that had to be excavated on account of some defect in the angle of repose of the dam as specified. The Supreme Court reversed the decision as to the first assignment on the ground that the specifications contained a deceptive representation of the material to be excavated and was misleading, but affirmed it as to the second assignment on the ground that it was stated in the specifications, when referring to the amounts of excavation to be done, that such amounts depended upon the determination of the angle of repose and were only approximate and, therefore, only estimated amounts.

We will not unnecessarily extend this opinion by making an analysis of the other cases cited by the appellant, for all of them present situations similar to the one set forth above. It clearly appears from all of them that the doctrine laid down by the Supreme Court of the United States in the *Hollerbach* and *Christie* cases, *supra,* should be applied to the case at bar. The estimated quantities of work inserted in the specifications were stated in the instructions to bidders, who were warned to determine for themselves the actual quantities required, and to assume all the risks as to any deviation therefrom in the different kinds of work actually performed. There was no warranty from the Municipality of Ponce in favor of any contractors who might submit bids regarding the excavation to be done. The cases cited by the appellant not only fail to uphold its contention but merely apply the general doctrine, which in 44 C. J. 401 is stated thus:

"As hereinafter shown, compensation for work exceeding in quantity, but of the same general character as, that indicated by estimates, plans, or profiles may be recovered only at the contract rate and not as for extra work . . . . Where plans, profiles, or estimates indicate a certain quantity of work to be done, but the quantity so indicated

is approximate only and the contractor is required to make a personal examination and take the risk of the quantity and extent of the work to be done, the fact that a larger quantity of work of the same general character is actually required does not entitle him to treat the additional work as extra work and recover therefor at a higher rate than the contract price; he may recover for the additional work as regular work at the contract price where the price is on a unit basis for the work actually done, but he cannot recover any additional compensation where the contract price is a lump sum.''

This rule has been applied in a great number of cases, most prominent among them being that of *Sullivan* v. *Sing Sing,* 122 N. Y. 389, 25 N. E. 366, cited by the lower court as very similar to the case at bar. In the specifications of the contract construed in the cited case there were also stated as approximate the quantities of work required for the construction of a bridge. It turned out afterwards that said quantities were inaccurate as it became necessary to excavate 2,936 cubic yards of dirt, whereas only 500 cubic yards had been stated. The contractor brought suit to recover on the excess as extra work and the Court of Appeals of New York, after reciting the facts, said:

'' . . . It comprehends, of necessity, as asserted, that the quantities named are merely estimated, for it is not only provided that the quantities constitute simply an estimate intended as a basis for proposal, but the further precaution is taken of stipulating in that connection that the board of trustees do not hold themselves absolutely bound by the quantities, and that contractors will take such steps as they may deem necessary to verify them. Without, therefore, considering the other portions of the contract, it seems that a reasonable construction requires the holding that all work of a general character provided for in the specifications, even though the amount of it may have been considerably in excess of the estimated quantities, comes within the work to be done at the contract prices.''

According to paragraph 7 of the stipulation submitted to the court below it has been admitted by the parties that there was no plat showing the location of the connections with the water main, so that neither the Municipality of

Ponce nor the contractor could know accurately beforehand the number of cubic meters to be excavated. For this reason, where the specifications state only approximate quantities and the contractor is warned to investigate the nature of the ground where the work is to be done, and he fails or is unable to do so, he assumes the risk, stated in the contract itself, of the estimated quantities of work turning out to be less than those actually needed. The case of *Leary* v. *City of Watervillet,* 118 N. E. 849, ratified by the Court of Appeals of New York in *Foundation Co.* v. *States,* 135 N.E. 236, and cited with approval by the Supreme Court of Oregon in *Inland Const. Co.* v. *City of Pendleton,* 242 P. 842, and in *Palmberg* v. *City of Astoria,* 228 P. 807, and by that of Kansas in *Scherrer* v. *State Highway Commission,* 80 P. (2d) 1105, is likewise similar to the case before us. In said case, the building of two dams was contracted for, and when carrying out the work it became necessary to excavate in excess of the approximate quantities stated in the specifications. The contractor sought to be paid for the excess work as extra work and the Court of Appeals, in affirming the decision of the court below, said:

"On the evidence before us the bid for work was based upon approximate estimates only, and was given and accepted as such. The payments therefor were to be made according to the amount of work performed whether the same was greater or less than the quantities specified in the approximation . . . No fraud or concealment by the commission is alleged. A variation in the estimate by the commission of the work to be done, arising by mistake or inadvertence or by changes of work contemplated, was at the risk of the contractors."

Applying the rule and the cases cited to the case at bar, it is our opinion that the defendant, under the terms of the contract, was not bound to pay to the plaintiff, as extra work and at a price other than that specified in the contract, for the excess over the quantities stated as approximate in the contract itself, and we further hold that the plaintiff, under the terms of the contract, waived the right to be paid at a

rate other than the stated unit price, unless the P.W.A. representative approved it, it being stipulated that his decision would be final. From the exhibits accompanying the stipulation submitted to the lower court, it appears that at one time the Mayor of Ponce agreed with the plaintiff that the latter should be paid for the excess as extra work; but this was an act of the mayor for which there was no authority under the contract whose paragraph 13 determined what work might be considered as extra work and how it should be paid for, both these requisites being subject to the approval of the representative of the P.W.A. The letter from the mayor to the plaintiff by itself could not bind the defendant municipality, inasmuch as it also appears from the exhibits that upon the matter being submitted to Mr. Hardman, representative of the P.W.A., he ruled that the work was not extra work and that it should be paid for at the unit price.

Under §4 of our Civil Code, rights granted by law may be waived, provided such waiver be not contrary to law, to public interest or public order, or prejudicial to a third person, and, as according to §1044 of the same code, obligations arising from contract have the force of law between the contracting parties and must be performed in accordance with their stipulations, the Caribbean Engineering Co., plaintiff herein, is bound by the terms of the contract to which it affixed its signature. Moreover, said contract, even assuming that the plaintiff had not waived the claim made by it, was subject, in so far as payment for extra work is concerned, to the final and definite approval of the representative of the P.W.A., and since, according to §1067 of the Civil Code, in conditional obligations, the acquisition of rights as well as the extinction or loss of those already acquired, shall depend upon the event constituting the condition, the plaintiff never acquired any right, inasmuch as the aforesaid approval never took place. It can not be argued, as appellant does in its brief, that the P.W.A. was actually a party to the contract (if we admitted this as a fact, the

entire stipulation submitted to the court below would be ineffective, as the same has not been subscribed by one of the parties, which argument supports what we have already stated in connection with paragraph 9 of the stipulation), and hence its representative could not serve as an arbiter with respect to the payment of extra work; for among the rules governing conditional obligations is the one set forth in §1068 of the Civil Code, which says that "if the fulfilment of the condition should depend...upon the will of a third person, the obligation shall produce all its effects in accordance with the provisions of this Code." The condition established for the purpose of determining what kind of work would be considered as extra work, payable at a rate other than that contracted for, depended, by agreement between the parties, upon the ruling of the representative of the P.W.A., such ruling to be considered final and conclusive. Neither of the parties may now repudiate the terms expressly agreed upon by it, in the absence of proof that its consent was due to error, force, intimation or fraud.

The first two errors assigned are without merit and so is the third, for we have repeatedly held that we will not interfere with the discretion of lower courts in awarding attorney's fees, unless a clear abuse of such discretion is shown, which was not done in this case.

The judgment appealed from must be affirmed.

Mr. Justice Snyder did not participate herein.