# HOLLERBACH *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 250.   Argued March 9, 1914.—Decided April 6, 1914.

A Government contract should be interpreted as are contracts between individuals and with a view of ascertaining the intention of the parties and to give it effect accordingly if that can be done consistently with its terms.

A positive statement in a contract as to present conditions of the work must be taken as true and binding upon the Government, and loss resulting from a mistaken representation of an essential condition should fall upon it rather than on the contractor, even though there are provisions in other paragraphs of the contract requiring the contractor to make independent investigation of facts.

47 Ct. Cls. 236, reversed.

THE facts, which involve the construction of a Government contract for public work and the rights of the contractor thereunder, are stated in the opinion.

*Mr. William B. King,* with whom *Mr. George A. King* and *Mr. William E. Harvey* were on the brief, for appellants:

Paragraph 33 contains a warranty.  This was admitted by the Court of Claims and is supported by authority.

As to the effect of pars. 20 and 70, there is no real contradiction and the special provisions control the general ones.  There was no assignment of contract.

In support of these contentions, see *Atlantic Dredging Co. v. United States,* 35 Ct. Cls. 463; *Bock v. Perkins,* 139 U. S. 628; *New York v. Am. Traffic Co.,* 121 N. Y. Supp. 221; *Delafield v. Westfield,* 41 N. Y. App. Div. 24; *S. C.,* 169 N. Y. 582; *Hobbs v. McLean,* 117 U. S. 567; *Hoffman v. Eastern Wis. R. Co.,* 134 Wisconsin, 603; *Horgan v. The Mayor,* 160 N. Y. 516; *Lauman v. Young,* 31 Pa. St. 306;

*Miller* v. *Wagenhauser,* 18 Mo. App. 11; *Munro* v. *Alaire,* 2 Caines, 327; *Newport Water Works* v. *Taylor,* 34 R. I. 478; *Richmond Ice Co.* v. *Crystal Ice Co.,* 99 Virginia, 239; *Scudder* v. *Perce,* 159 California, 429; *Simpson* v. *United States,* 172 U. S. 372; *Stout* v. *United States,* 27 Ct. Cls. 385; *United States* v. *Stage Co.,* 199 U. S. 414.

*Mr. Assistant Attorney General Thompson* for the United States, submitted:

Paragraph 33 is modified by paragraphs 20 and 70 and contains no warranty.

Cases quoted from by appellants to support their contention that they were warranted in relying upon representation of Government in provision 33 can be distinguished from case at bar.

The rule as to general provisions being limited by special words does not apply to this case.

The contract must be considered as a whole and the authorities cited by appellants are distinguishable from this case. See *Atlantic Dredging Co.* v. *United States,* 35 Ct. Cls. 463; *Bock* v. *Perkins,* 139 U. S. 628; *Burgwyn* v. *United States,* 34 Ct. Cls. 348; *Delafield* v. *Westfield,* 28 N. Y. Supp. 440; *S. C.,* 169 N. Y. 582; Elliott on Contracts, § 3665; *Grieffen* v. *United States,* 43 Ct. Cls. 107; *Horgan* v. *Mayor,* 160 N. Y. 516; *Hoffman* v. *Eastern Wisconsin R. R. Co.,* 134 Wisconsin, 603; *Huse* v. *United States,* 44 Ct. Cls. 19, 32; *S. C.,* 222 U. S. 496; *Lewman* v. *United States,* 41 Ct. Cls. 486; *Lindeke* v. *Associate Realty Co.,* 146 Fed. Rep. 630; *Newport Water Works* v. *Taylor,* 34 R. I. 478; Page on Contracts, § 1113; *Richmond Ice Co.* v. *Crystal Ice Co.,* 99 Virginia, 239; *Scudder* v. *Perce,* 159 California, 429; *Shappirio* v. *Goldberg,* 192 U. S. 232; *Simpson* v. *United States,* 172 U. S. 372; *S. C.,* 31 Ct. Cls. 217; *Smith* v. *Curran,* 138 Fed. Rep. 150; Sutherland on Stat. Const., § 279; *United States* v. *Stage Co.,* 199 U. S. 414; *United States* v. *Mescall,* 215 U. S. 26.

Mr. Justice Day delivered the opinion of the court.

This suit was brought to recover upon a contract between the appellants, doing business as Hollerbach & May, and the United States for the repair of Dam No. 1, Green River, Kentucky. In the aspect in which it is now presented the question involved concerns the right of the claimants to recover because of certain damages alleged to have been suffered by them which would not have accrued had the dam been backed with broken stone, sawdust and sediment, as was stated in paragraph 33 of the specifications attached to the contract.

The determination of this controversy requires reference to certain parts of the contract and the findings of the Court of Claims. The specifications provide, among other things:

"20. It is understood and agreed that the quantities given are approximate only, and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. Bidders, or their authorized agents, are expected to examine the maps and drawings in this office, which are open to their inspection, to visit the locality of the work, and to make their own estimates of the facilities and difficulties attending the execution of the proposed contract, including local conditions, uncertainty of weather, and all other contingencies.

\*     \*     \*     \*     \*     \*     \*     \*

"33. Work to be done. . . . The present dam, a wooden crib structure, is 528 feet long between abutments and about 52 feet wide at its base. The expected depth of concrete work is shown on the blue prints, but it may be made greater, as the condition of the old timber may render it necessary. The work shall be carried out in sections, generally from 50 to 100 feet long, and no more of the old work shall be torn out than can be rebuilt in a few days in

case of necessity. All the exterior surfaces of the concrete shall be faced with the facing described in paragraph 59, which shall be placed before the concrete below has set, and shall be smoothly finished off. The dam is now backed for about 50 feet with broken stone, sawdust, and sediment to a height of within 2 or 3 feet of the crest, and it is expected that a cofferdam can be constructed with this stone, after which it can be backed with sawdust or other material. The excavation behind the dam will be required to go to the bottom, and it is thought that a slope of 1 horizontal to 1.2 vertical will give ample room.

\* \* \* \* \* \* \* \*

"60. Blueprints. Blueprint drawings showing the method of construction may be seen at this office; they shall form a part of these specifications and shall not be departed from except as may be found necessary by the condition of the old timber encountered.

\* \* \* \* \* \* \* \*

"70. Investigation. It is expected that each bidder will visit the site of this work, the office of the lockmaster, and the office of the local engineer and ascertain the nature of the work, the general character of the river as to floods and low water, and obtain the information necessary to enable him to make an intelligent proposal."

The Court of Claims found as a matter of fact, among other things:

"As the contractors proceeded with the work of removing the material behind the dam it was found that said dam was not backed with broken stone, sawdust, and sediment as stated in paragraph 33 of the specifications, but that said backing was composed of a soft slushy sediment from a height of about 2 feet from the crest to an average depth of 7 feet, and below that to the bottom of the required excavation said dam was backed by cribwork of an average height of 4.3 feet consisting of sound logs filled with stones." (47 Ct. Cls. p. 238.)

The Court of Claims refused to enter judgment for the damages suffered by reason of the difference in the backing of the dam as found by the court, but estimated the damages for the matters in dispute in that respect to aggregate $6,549.23 (47 Ct. Cls. 236).

In the course of its opinion the court below said that if paragraph 33 stood alone it would be a warranty of the material backing the dam. "It was," said the court, "a positive and material representation as to a condition presumably within the knowledge of the Government, and upon which, in the absence of any other provision or warranty the plaintiffs had a right to rely." But the court held that the cautionary provisions of paragraphs 20 and 70 required the claimants to inform themselves of the condition of the backing of the dam and that when those paragraphs were read with paragraph 33 the statements and representations of the last named paragraph could not be regarded as a warranty upon which the claimants had the right to rely, and the court reached this conclusion upon the authority of certain cases of its own and *Simpson* v. *United States,* 172 U. S. 372.

In *Simpson* v. *United States, supra,* suit was brought upon a contract for the construction of a dry dock at the Brooklyn Navy Yard. It was discovered that the foundations upon which the dry dock rested contained quicksands which were unknown and which were not shown in the drawings and plans inspected by the contractors before the making of the contract and upon the strength of which the contractors had made their bid. This court held that the written contract merged all previous negotiations and must be presumed in law to express the final understanding of the parties. Of the contract itself the court said that it was clear that there was nothing in its terms which supported, even by remote implication, the premise upon which the claimants rested their right of recovery; that the contract contained no statement or

agreement or even intimation of a warranty, express or implied, concerning the character of the underlying soil at the place where the dock was to be built; that the only word in the contract which supported the contention of warranty was that the dock was to be built in the navy yard upon a site which was "available," and that the word "available" did not warrant against the quicksands which were found, and it certainly did appear that the site was available for the dock was constructed upon it. It is therefore apparent that this case is entirely different from the one now under consideration, in the contents of the contract and specifications made part thereof, and that in the *Simpson Case* the claimants relied upon previous negotiations and information as to the site for the dock, developed in the plans showing the result of an examination made by Government officers upon a portion of the yard, and did not depend, as here, upon the terms of the contract.

In this case the claimants rely upon the contract, read in the light of the findings of the Court of Claims. Turning to paragraphs 20 and 70 the Court of Claims justified its conclusion in that part of paragraph 20 which provides that "quantities given are approximate only, and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. Bidders, or their authorized agents, are expected . . . to visit the locality of the work, and to make their own estimates," etc.; and in that part of paragraph 70 which reads, "it is expected that each bidder will visit the site of this work, . . . and ascertain the nature of the work," etc. The term "quantities" as used in paragraph 20 may doubtless refer to estimates of the amount of different kinds of work which are specified in the contract. We do not see how it could control the statement of paragraph 33, definitely made, as to the character of the material back of the dam. Pertinent parts of the paragraphs

referred to would seem to be those which required bidders, or their authorized agents to investigate for themselves and to visit the locality of the work to ascertain its nature and make their own estimates thereof. The specifications attached to the contract set forth the work to be performed in great detail, as to its nature and character, and many particulars as to manner and extent of the work to be done, the removal of old timber and material, etc., the general character of the river as to floods, and low water, etc., and the difficulties attending the execution of the contract, and as to all these things the bidder was required by paragraphs 20 and 70 to make examination for himself and at his own peril.

In paragraph 33 the Government sets forth with particularity a description of the old dam, its length and width, and it was there added: "The dam is now backed for about 50 feet with broken stone, sawdust and sediment to a height of within 2 or 3 feet of the crest," etc. The specifications provided that the excavations behind the dam must be to the bottom. In the light of this specification, turn to the finding of fact, and we learn that the claimants, as they proceeded with the work, found that the dam "was not backed with broken stone, sawdust and sediment as stated in paragraph 33 of the specifications," and below seven feet from the top to the bottom there was a backing of cribbing of an average height of 4.3 feet of sound logs filled with stone. Obviously, this made it much more expensive to do the work than if the representation inserted by the Government in the specifications of its own preparation had been true and only the character of material had been found which the specification unequivocally asserted was there.

A Government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms

of the instrument. In paragraph 33 the specifications spoke with certainty as to a part of the conditions to be encountered by the claimants. True the claimants might have penetrated the seven feet of soft slushy sediment by means which would have discovered the log crib work filled with stones which was concealed below, but the specifications assured them of the character of the material, a matter concerning which the Government might be presumed to speak with knowledge and authority. We think this positive statement of the specifications must be taken as true and binding upon the Government, and that upon it rather than upon the claimants must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the Government as a basis of the contract left in no doubt. If the Government wished to leave the matter open to the independent investigation of the claimants it might easily have omitted the specification as to the character of the filling back of the dam. In its positive assertion of the nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity. See *United States* v. *Stage Co.*, 199 U. S. 414, 424.

It follows that the judgment of the Court of Claims must be reversed and the case remanded to that court with directions to enter judgment for the claimants for the damages incurred because of the different character of material found behind the dam than that described in the specifications.

*Reversed.*