**ROBERT E. McKEE, INC.**

v.

**The CITY OF ATLANTA.**

**Civ. A. No. C74–2506A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

May 11, 1976.

Harry L. Griffin, Jr. and John D. Sours, of Smith, Currie & Hancock, Atlanta, Ga., for plaintiff.

Henry R. Bauer, Jr., Asst. City Atty., Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, Chief Judge.

This is a diversity action brought by plaintiff contractor against the City of At-lanta for compensation for additional work performed under a contract for the construction of the Utoy Creek Water Pollution Control Plant. The case is currently before the court on defendant's motion for summary judgment.

The City awarded the construction contract in question to the plaintiff after plaintiff submitted the lowest bid for the work at $5,978,000. In order for the plaintiff to construct the facility in question it was necessary for it to undertake a certain amount of excavation of dirt and rock. Prior to bidding, the defendant City engaged a private firm to undertake subsurface investigations, and this was done by taking borings at selected locations. Upon undertaking the excavation, the plaintiff allegedly discovered that the level of rock was substantially higher than had been represented by the borings, and was therefore required to expend an additional $245,500 in order to complete the excavation. The defendant contends that it is not liable for any additional expenses incurred by the plaintiff since the contract specified that the subsurface information provided was not intended as a representation or warranty and that the defendant was not liable for any inaccuracy contained in that information.[1] The defendant also argues that the contract clearly placed the burden of risk for unknown obstacles upon the plaintiff,[2] and that the plaintiff should therefore be made to absorb the cost for miscalculation.

The defendant is correct in its claim that the mere showing of subsoil conditions unexpected by either party does not

---

1. Paragraph 5.4 of the contract at p. 7–7 states: "The subsurface information and data furnished in the drawings are not intended as representations or warranties but are furnished for information only. It is expressly understood that the Owner will not be responsible for the accuracy thereof or any deduction, interpretation, or conclusion drawn therefrom by the Contractor. The information is made available in order that the Contractor may have ready access to the same information available to the Owner and is not a part of this Contract."

2. Paragraph 14(a) on p. 6–6 states in part: " * * * Bidders shall make their own inter-pretation and evaluation of these investigations and shall be fully responsible for the subsurface and foundation conditions that are encountered in performing this construction work. Neither the City nor the Engineer is responsible for the accuracy or completeness of these investigations."

See also paragraph 4, p. 2–1 of the plaintiff's bid proposal: "Bidder further declares that he has examined the site of the work and the building and labor conditions and has informed himself fully in regard to all conditions pertaining to the place where the work is to be done; that he has examined the plans and specifications for the work and the other contract docu-

automatically release the contractor from his obligations under the contract. If the contract clearly places the risk of uncertainty on one of the parties, then that party must absorb the losses resulting from the unexpected condition, *Flippin Materials Co. v. United States,* 312 F.2d 408, 160 Ct.Cl. 357 (1963). The defendant is also correct in its conclusion that this contract explicitly places the risk of uncertainty on the plaintiff. But this conclusion does not itself resolve the issue before the court: whether the defendant is liable to the plaintiff because it materially misrepresented facts about the subsoil in question.

The Supreme Court held long ago, in a series of cases relating to government contracts, that the government is liable to the contractor when it makes positive statements of material facts concerning the nature of the work in question, when those facts are false, *Hollerbach v. United States,* 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914), *Christie v. United States,* 237 U.S. 234, 35 S.Ct. 565, 59 L.Ed. 933 (1915), *United States v. Spearin,* 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918).[3] Moreover, general exculpatory clauses which disclaim any responsibility for the accuracy of that data have been held to be of no effect when the positive specifications made by the government were obviously intended to be used by the bidding contractors in formulating their bids, *Hollerbach, supra,* 233 U.S. at 172, 34 S.Ct. 553. This implied warranty as to jobsite conditions "is not overcome by the general clauses requiring the contractor to examine the site, to check up the plans, and to assume responsibility for the work until completion and acceptance," *Spearin, supra,* 248 U.S. at 137, 39 S.Ct. at 61. The reason for holding the government liable for certain material misrepresentations is simple: certain jobsite investigations are not expected to be performed by each and every bidder; rather, the government performs certain basic tests in order to provide each bidder with some information on which he may make his bid. If every bidder were required to perform all the investigations, even though the chance of receiving the bid was remote, the number of bids would decrease and the dollar amount of the bids would increase.

■■■ Of course, the government does not become an insurer merely by providing certain information. State courts, in applying the principles enunciated above, have imposed two implied conditions on a claim for recovery for misinformation. The first requirement is that the bidder is not reasonably able to discover the true facts for himself. This factor was touched upon in *Christie, supra,* where the Supreme Court found not only that the borings performed by the government were misleading, but also that the contractors did not have sufficient time to take borings themselves.[4] The

---

ments relating thereto and has read all Special Conditions furnished prior to the opening of bids; and that he has satisfied himself relative to the work to be performed."

**3.** As will be shown below, the principles enunciated in these cases have generally been accepted by courts throughout the country. Although there are no Georgia cases specifically applying these cases, the Georgia Supreme Court cited the listed cases with approval in *Decatur County v. Praytor, Houston & Wood Contracting Co.,* 165 Ga. 742, 142 S.E. 73 (1928).

**4.** *But see Hollerbach, supra,* 233 U.S. at 172, 34 S.Ct. 553, at 556, where the Court concluded that, although the contractors, by independent investigation, could have discovered the true nature of the subsurface conditions, "the specifications assured them of the character of the material,—a matter concerning which the government might be presumed to speak with knowledge and authority. . . . We think it would be going quite too far to interpret the general language of the other [exculpatory] paragraphs as requiring independent investigation of facts which the specifications furnished by the government as a basis of the contract left in no doubt. If the government wished to leave the matter open to the independent investigation of the claimants, it might easily have omitted the specification as to the character of the filling back of the dam. In its positive

New York courts have held therefore that the state is liable for misrepresentations as to conditions only if "inspection would have been unavailing to reveal the incorrectness of the representations", or if the representations were made in bad faith. *Warren Bros. Co. v. NYS Thruway Authority,* 34 A.D.2d 97, 309 N.Y.S.2d 450 (A.D.1970). The New York Court of Appeals, in affirming the decision in *Warren Bros.* in favor of the state, concluded that no misrepresentations were made and that "an appropriate inspection of the job site by claimant, a requirement imposed by the proposal and the contract, would have revealed the actual condition had not such inspection been confined to driving along the highway in an automobile," 34 N.Y.2d 770, 358 N.Y.S.2d 139, 314 N.E.2d 878 (1974). What inspection is "appropriate", of course, depends on the facts of each case, and the central question in each case is whether the bidder placed "justified reliance" on the data provided by the government, *Haggart Construction Co. v. State Highway Commission,* 427 P.2d 686 (S.C.Mont.1967). In *Haggart,* the court concluded that the bidders had neither sufficient time nor adequate facilities to verify the state's data. It was obvious to the court that the state provided the data with the expectation that bidders would rely on it in submitting their bids. In *Condon-Cunningham, Inc. v. Day,* 22 Ohio Misc. 71, 258 N.E.2d 264 (Ct.C.P., Ohio, 1969), the Ohio court, in finding against the state on a contract claim, stressed the fact that the soil borings at issue could only be performed at considerable expense, and concluded that it would be unrealistic to expect each bidder to perform the boring himself:

> " * * * Was each bidder to run these tremendously expensive core boring tests not knowing whether or not he would get the contract? Under defendant's contention there would be practically no bidders. A bidder would be faced with this dilemma. Shall I bid on what is presented to be and run the risk of loss if the information is not correct or shall I run core boring tests at great expense, amounting to thousands of dollars, which expense I must bear on my own if I do not secure the contract?" 258 N.E.2d at 274-5.

Thus, the first question that must be asked in each contract case involving misrepresentation is whether the contractor could have discovered the true facts through *reasonable* investigation. In determining whether such investigation should have been done the court should consider the time constraints involved, the cost of the investigation in comparison to the total bid price, and the detailed nature of the government's data. If the court finds that it would be unrealistic to expect bidders to uncover the error on their own, then the exculpatory clauses should be given no effect.

■ The second condition placed on a claim for recovery for misrepresentation is the materiality of misrepresentation itself. Recovery cannot be had for a contractor's own misjudgment based on information which itself is accurate. Thus, where the government undertakes a series of borings which are accurate, but which seem to indicate that there is less rock in this subsoil than actually exists, the contractor cannot recover for the cost of removing the extra rock, *McNulty, Inc. v. Village of Newport,* 290 Minn. 117, 187 N.W.2d 616 (1971). When the contractor has the actual, and accurate, statistics before him when he makes his bid, he assumes the risk of any deviation in conditions from those indicated by the samples. In other words, if the government does not provide incorrect factual representations, the exculpatory clauses in the contract placing the burden of uncertainty on the contractor should be given full force and effect. "[T]he state is not liable for conclusions drawn by a bidder when the state has done little more than represent the results of its investigations and the bidder knew or should have known of the factual bases for the representa-

---

assertion of the nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity."

tions," *E. H. Morrill Co. v. California,* 65 Cal.2d 787, 56 Cal.Rptr. 479, 481, 423 P.2d 551, 553 (1967), *citing Wunderlich v. California,* 65 Cal.2d 777, 56 Cal.Rptr. 473, 423 P.2d 545 (1967),[5] *see also Dravo v. Municipality of Metropolitan Seattle,* 79 Wash.2d 214, 484 P.2d 399, 403 (1971).

Applying these principles to the facts of this case, the court concludes that summary judgment should not be granted at this time. Although neither party has adequately presented the court with a concise statement of facts (including a statement of material facts at issue as required by Local Court Rule 91.72), the court is able to conclude that there is a factual dispute as to both conditions of recovery; *i. e.,* (1) whether the plaintiff could have discovered the correct facts concerning subsoil conditions through reasonable investigation prior to the contract, and (2) whether the data actually provided to the plaintiff was inaccurate.[6] As to the first condition, it is rather apparent that the plaintiff could not discover the true height of subsurface rock by means of the on-site investigation which it conducted. The more important question, however, is whether the plaintiff should have been expected to conduct its own boring prior to bidding. As to the second condition, it will not be sufficient for the plaintiff to show that it was misled by the general conclusions made by the City's agents as to the nature of the soil; the plaintiff must show that the underlying factual data—which the plaintiff apparently had access to—was inaccurate. Since the plaintiff asserts that its tests demonstrated that the borings themselves were inaccurate, and since the court cannot determine, at this time, what further investigation by the plaintiff would be considered reasonable, the defendant's motion for summary judgment must be DENIED.

---

**5.** The California Supreme Court stated in *Wunderlich*: "It is obvious that a governmental agency should not be put in the position of encouraging careless bidding by contractors who might anticipate that should conditions differ from optimistic expectations reflected in the bidding, the government will bear the costs of the bidder's error. Although there is some evidence that plaintiffs 'relied' on the alleged representations as to the character of the Wilder pit, the question is whether, under the circumstances of the indefinite nature of the statements and the existence of exculpatory provisions, the bidder could *justifiably* rely on the statements. It does not appear that plaintiffs could have done so, and the state is not responsible for the subjective interpretation placed upon the information by bidders. When there is no misrepresentation of factual matters within the state's knowledge or withholding of material information, and when both parties have equal access to information as to the nature of the tests which resulted in the state's findings, the contractor may not claim in the face of a pertinent disclaimer that the presentation of the information, or a reasonable summary thereof, amounts to a warranty of the conditions that will actually be found." 423 P.2d at 550.

**6.** The defendant argues that it should not be held liable even if its data should prove to be erroneous, because the plaintiff's subcontractor, in preparing its bid, allowed for a 50% increase in subsoil rock above that indicated by the data. Thus, argues the defendant, there could be no reliance on its statistics. The court disagrees. While each contractor is expected to take account of the fact that the actual conditions may be different from those indicated by the sample borings, this does not mean that the contractor must also assume that the samples themselves are incorrect. Thus, plaintiff's subcontractor may have concluded that the rock elevation between the borings could easily be at variance with the boring elevations, but it seems apparent that it based its estimates on the assumption that the boring elevations themselves were correct.