JACK B. PARSON CONSTRUCTION
CO., a Utah corporation, Plaintiff
and Appellant,

v.

The STATE of Utah, By and Through the
DEPARTMENT OF TRANSPORTA-
TION, Defendant and Respondent.

UTAH DEPARTMENT OF TRANSPOR-
TATION, Third-Party Plaintiff
and Respondent,

v.

AETNA CASUALTY & SURETY COM-
PANY, Third-Party Defendant
and Appellant.

No. 19673.

Supreme Court of Utah.

April 1, 1986.

As Amended on Rehearing
Sept. 12, 1986.

John P. Ashton, James A. Boevers, Salt Lake City, Robert G. Taylor, Carroll L. Bryan, II, Seattle, Wash., for plaintiff and appellant.

David L. Wilkinson, Atty. Gen., Donald S. Coleman, Leland D. Ford, Salt Lake City, for defendant and respondent.

## AMENDED OPINION ON REHEARING

ZIMMERMAN, Justice:

Plaintiff Jack B. Parson Construction Co. ("Parson") appeals from a declaratory judgment holding it in breach of a road construction contract with the Utah Department of Transportation ("UDOT"). The trial court found that UDOT had not made misleading statements upon which Parson reasonably relied and which resulted in Parson's being unable to perform the contract. We conclude that UDOT did make misleading statements and remand for a determination whether Parson's reliance on those statements was reasonable.

UDOT advertised for bids to pave a portion of Interstate 70 in Emery County, Utah. It furnished all prospective bidders, including Parson, with a bound set of documents labeled "Plans." The documents included in this volume were selected for inclusion by UDOT employees and were to furnish a basis for bids. Among the documents was "sheet 2B," which showed the location and boundaries of two borrow pits labeled "prospect No. 1" and "prospect No. 2." The sheet described the contents of the prospects as "limestone ledge rock" and set out the results of certain tests run on the material in the pits to determine whether it met the contract specifications. Another document included in the bound volume was a special provision labeled "sheet 44." It described the prospects in some detail and included the statement that each had been used previously for base and surface course on I–70 projects. Although bidders could request permission to use other sources, these two prospects were the only economically feasible sources of paving materials in the general area of the project. All those who actually bid on the project specified these prospects as their proposed source.

Paragraph 102.05 of the *State of Utah Standard Specifications for Road and Bridge Construction* (1970 ed.) (*"Utah Standard Specifications"*) requires bidders to visit the prospective material site and visually inspect it. Two of Parson's employees did visit the prospects. They concluded that the materials were consistent with the test data on sheet 2B and would be suitable.

Parson submitted the low bid for the project and was awarded the contract. After Parson had crushed some materials from prospect No. 2 and had laid some of the asphalt, inspection revealed that the asphalt did not meet contract specifications because of the poor quality of the crushed rock. Adjustments were made in the crushing process and blend sand was added, but to no avail. Some four months after starting work, Parson shut down the operation. Although attempts were made by UDOT and Parson to negotiate a solution, an impasse was reached when Parson insisted on changes in the contract that

UDOT would not or could not make. UDOT ordered Parson to perform. When it refused, UDOT terminated the contract as provided by its terms.

Parson sought both a declaratory judgment construing the terms of the contract and damages against UDOT, claiming breach of contract or negligent and/or intentional misrepresentation. After trial, the court entered extensive findings of fact and conclusions of law. It rejected Parson's claims and ruled that Parson, not UDOT, had breached the contract.

On appeal, Parson does not challenge the findings of fact; instead, it contends that the trial court drew erroneous conclusions from those facts. Parson relies principally on our decision in *Thorn Construction Co. v. Utah Department of Transportation,* 598 P.2d 365 (Utah 1979), arguing that under *Thorn,* UDOT's representations are actionable as a matter of law. UDOT's response calls for us to abandon the reasoning of the majority in *Thorn* and adopt the rationale of the dissent. This we decline to do. Therefore, if the trial court is to be upheld, it must be because liability has not been proven under *Thorn.*

In *Thorn,* this Court quoted with approval the following language from the case of *Souza & McCue Construction Co. v. Superior Court,* 57 Cal.2d 508, 370 P.2d 338, 339-40, 20 Cal.Rptr. 634, 635-36 (1962):

A contractor of public works who, acting reasonably, is misled by incorrect plans and specifications issued by the public authorities as the basis for bids and who, as a result, submits a bid which is lower than he would have otherwise made may recover [damages] in a contract action....

598 P.2d at 368. The *Thorn* Court then held that if affirmative representations made are inaccurate, and the inaccuracies make the plans and specifications misleading, the contractor can recover damages caused by reasonable reliance upon them. 598 P.2d at 367-69.

■ Applying this analysis to the present case, the first question is whether the documents containing the allegedly misleading information were part of the plans and specifications upon which Parson was entitled to rely. The trial court found that sheet 44 was part of the contract documents. The more critical document, however, was sheet 2B. The trial court found that sheet 2B was included within the bound set of documents marked "Plans" and furnished to Parson. However, the court concluded that sheet 2B was not part of the plans and specifications for the job because it did not fall within the technical definition of the word "plans" set forth in the *Utah Standard Specifications.*

This approach to the term "plans and specifications" is contrary to the spirit of *Thorn.* The quotation from *Souza* does use those words, and much of the rest of the *Thorn* Court's discussion is also in terms of "plans"; however, the whole focus of that opinion is on the accuracy of the foundation material provided the bidder. There is nothing in *Thorn* that suggests such cases should turn on whether some bit or piece of information can be artfully defined out of the term "plans and specifications." To the contrary, in *Thorn,* the Court permitted liability to be imposed for an oral statement made regarding the suitability of a borrow source that was wholly without parallel in the written plans and specifications. As a matter of practical construction, then, sheet 2B was plainly part of the plans and specifications: it was furnished to the bidder by UDOT to provide foundation material for the bid and, as such, was something upon which the bidder was entitled to rely and which must be scrutinized for accuracy.

■ The next question is whether sheet 2B and sheet 44 contained misleading assertions. The trial court answered this question in the negative. We disagree. Sheets 2B and 44 plainly suggested that satisfactory borrow could be taken readily from the two designated prospects. For example, the bore hole test results listed on sheet 2B showed that the material met contract specifications. In addition, the "Local Material Sources" subsection of the *Utah Standard Specifications,* referred to on sheet 2B, expressly provided that the "quality of materials in such deposits will

be acceptable in general." However, the clear impression conveyed by these sheets was false, as information in the possession of UDOT showed. All but one of the tests reported on sheet 2B were conducted in 1969—nine years before Parson bid on the contract at issue—and the tested material had all been removed from the sites long ago. At the time of Parson's bid, material of similar quality was to be found in the prospects only under a substantial layer of overburden. In addition, the state had more recent test results showing that the material in the prospects might be marginal, but these were not cited on sheet 2B. The state also knew, but did not disclose, that after the date of the 1969 tests summarized on sheet 2B, a contractor had experienced difficulty in using prospect No. 2, had submitted a pit evaluation report to that effect, and had recommended that the prospect not be relied upon as a source of material for future road projects. The foregoing leads to the inescapable conclusion that the selective inclusion of the test results on sheet 2B was affirmatively misleading as to the suitability of borrow in the prospects. The general statements on sheet 44 only reinforced the misleading character of sheet 2B.

■ UDOT asserts that, assuming there were errors on the sheets, the information there presented was not misleading if considered together with other available information. And UDOT asserts that a bidder is chargeable with constructive knowledge of any information it could have obtained by contacting prior contractors and by searching the state's files. Information available from these sources would have put sheets 2B and 44 in perspective and resulted in an accurate picture of the prospects. To support this claim of a general duty to inquire and the consequent asser-

tion of constructive knowledge, UDOT relies on a general disclaimer and a reference in the contract documents to the availability of other materials. As *Thorn* held, a general disclaimer or reference to other materials is ineffective to qualify a specific misleading representation; the general duty such a disclaimer imposes is superseded by a specific, positive misstatement, and the bidder is not required to search further for the facts. *Thorn Construction Co. v. Utah Department of Transportation*, 598 P.2d at 367–68; *cf. L.A. Young Sons Construction Co. v. County of Tooele*, 575 P.2d 1034 (Utah 1978) (no evidence of misrepresentation of critical fact).[1]

This Court's refusal in *Thorn* to permit a general disclaimer to impose a requirement that a bidder must investigate the state's specific affirmative representations to determine their truth has a sound basis in policy. Permitting a bidder to rely upon affirmative statements will place responsibility for the accuracy of bidding information on the party best suited to determine whether it is misleading—the state. It also obviates the necessity for bidders to pad their bids to protect against unexpected costs that may be incurred as a result of carelessly prepared plans and specifications. On the other hand, the rule urged upon us by UDOT can only be expected to encourage sloppy work by those preparing plans and specifications and to increase the cost of state projects, for no better reason than to relieve the state's employees of any duty to be accurate in representing facts known to them.

Under the *Thorn* analysis, the final question is whether Parson's reliance upon the misstatements in the bidding documents was reasonable. The trial court's findings do not permit us to reach a conclusion on this point. The trial court found that two

---

1. UDOT cites *Highland Construction Co. v. Stevenson*, 636 P.2d 1034 (Utah 1981), for the proposition that a bidder is charged with constructive knowledge of facts contained in documents available for inspection. *Highland Construction* is not on point. There, the party soliciting the bid made no affirmative representation regarding the critical subsurface conditions; it only referred the bidder to other documents on file which revealed potential problems. In the present case, the state made a positive representation regarding the suitability of the material in the prospects. *Flippin Materials Co. v. United States*, 160 Ct.Cl. 357, 312 F.2d 408 (1963), and *Evans Reamer & Machine Co. v. United States*, 181 Ct.Cl. 539, 386 F.2d 873 (1967), *cert. denied*, 390 U.S. 982, 88 S.Ct. 1102, 19 L.Ed.2d 1279 (1968), relied upon by UDOT, also do not deal with positive misstatements and, therefore, are inapposite.

of Parson's employees performed the site inspection required by the bid documents and conducted a physical inspection of the prospect that included photographing all exposed cuts, feeling rock samples for texture, and performing scratch tests. It also found that these employees "believed" that this inspection confirmed the accuracy of the specifications contained on sheets 2B and 44 and "elected" to rely on the accuracy and adequacy of the state's representations, instead of conducting additional laboratory work. The trial court then concluded that a reasonably prudent contractor would have gained sufficient information from a properly conducted site visit (including the additional lab tests) to anticipate the need to either remove some of the overburden or somehow handle and dispose of it during the crushing operation to avoid contaminating the asphalt. In effect, the trial court found that if the inspection actually conducted had been done properly, Parson would have had notice of the conditions that prevented it from properly using the good quality material in prospect No. 2.

If the trial court's conclusion was consistent with the law, we could easily resolve this case by concluding that Parson's reliance upon the misstatements in the plans and specifications was not reasonable. However, we cannot rely on this conclusion because it is based on the assumption that Parson had a duty to perform further laboratory tests if it was to conduct the site visit properly.

 A bidder is required to "examine carefully the site of the proposed work" just as it must "examine carefully ... the proposal, plans, specifications, supplemental specifications, special provisions and contract forms" before submitting a bid. However, in light of the policy underlying *Thorn*, this general requirement of a site

inspection cannot be relied upon to impose a duty on all bidders to conduct additional testing if a reasonably conducted physical inspection appears to confirm the accuracy of the state's specific representations. Such a requirement would undercut the proposition that one is entitled to rely on specific representations in state bidding documents. What constitutes an adequate examination of the site is a mixed question of fact and law, but a trial court in making that determination must take into account this underlying policy.[2]

In the present case, we cannot separate the trial court's apparent factual conclusion that the site visit was not properly conducted from its assumption that the bidder had a duty to do tests to confirm the accuracy of the state's specific representations. Therefore, we cannot determine whether the trial court would have concluded that the site inspection conducted by Parson was performed in a reasonable manner if it had correctly applied the law in formulating the inspection obligation. Accordingly, this matter must be remanded for determination of the reasonableness of Parson's reliance on the misstatements in the bid documents.

The judgment below is vacated and the matter remanded for further proceedings consistent with this opinion.

HALL, C.J., HOWE, and RODNEY S. PAGE, District Judge, concur.

STEWART, J., concurs in the result.

DURHAM, J., having disqualified herself, does not participate herein; PAGE, District Judge, sat.

---

**2.** In *Thorn*, this Court did not consider whether the mandatory site visit there was properly performed by the bidder. However, the facts of *Thorn* suggest that an adequate site visit might have revealed the unsuitability of the material. If this is true, that fact could have changed the result in *Thorn*.

Clearly, in some cases a properly performed inspection will not reveal errors in the state's

specifications, *see E.H. Morrill Co. v. State*, 65 Cal.2d 787, 423 P.2d 551, 552, 56 Cal.Rptr. 479, 480 (1967), while in others it will, *see Highland Const. Co. v. Stevenson*, 636 P.2d at 1037. Where such an inspection, properly performed, will not reveal errors in the specifications, reliance on the state's affirmative misstatements would appear to be reasonable.