Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596 HTML Code Â© State Bar of South Dakota, 1999
MORRIS, INC.,
a corporation with its principal place of business at Fort Pierre,
Stanley County, South Dakota,
Plaintiff and Appellant,
v.
STATE OF SOUTH DAKOTA BY AND THROUGH THE SOUTH DAKOTA DEPARTMENT OF TRANSPORTATION,
a state agency located at Pierre, Hughes County, South Dakota,
Defendant and Appellee.
[1999 SD 45]
South Dakota Supreme Court
Appeal from the Third Judicial Circuit, Hand County, SD
Hon. Eugene L. Martin, Judge
#20362--Reversed
Ronald G. Schmidt, Schmidt, Schroyer & Moreno, Pierre, SD
Attorneys for Plaintiff and Appellant.
Barton R. Banks, Banks, Johnson, Colbath & Kerr, Rapid City, SD
Attorneys for Defendant and Appellee.
Considered on Briefs Sep 17, 1998; Reassigned Mar 24, 1999
Opinion Filed Jul 21, 1999
AMUNDSON, Justice (on reassignment). 
[Â¶1] Morris, Inc. (Morris) held a subcontract with the South Dakota Department of Transportation (DOT) for a highway paving project in Hand County, South Dakota. Morris incurred unforeseen additional expenses due to difficulties in extracting the necessary aggregate from a state option gravel pit. Morris filed an administrative claim for reimbursement for these expenses. DOT denied reimbursement. Morris brought suit in circuit court. The trial court granted summary judgment in favor of DOT. Morris appeals. We reverse and remand.
FACTS 
[Â¶2] Morris is an aggregate materials supplier and construction contractor with its principal place of business in Fort Pierre, South Dakota. In July 1994, DOT gave notice to prospective bidders regarding a highway paving project near Ree Heights in Hand County, South Dakota (Ree Heights project). The deadline for the bids was scheduled for August 17, 1994.
[Â¶3] Approximately thirty days prior to the deadline for bid letting, DOT furnished plans and proposals for the work to interested asphalt contractors and aggregate material suppliers, such as Morris. The plans included data on a state option pit owned by and leased from Leonard Fawcett (Fawcett Pit). The plans included pit bore data representing the quantity and quality of material available for purposes of obtaining the aggregates required to construct this specific project. In the pit data supplied to prospective contractors, DOT did not identify the date the pit borings were conducted. A general disclaimer was included in the package of materials, regarding the accuracy of the data. (fn1)  Morris used the data supplied by DOT for purposes of quoting the supply of necessary aggregate materials to interested asphalt paving contractors, who used these quotes to complete and submit their bids to DOT.
[Â¶4] DOT awarded the contract to McLaughlin & Schultz, Inc. McLaughlin & Schultz, Inc., in turn, subcontracted with Morris to provide the aggregate based on the quote.
[Â¶5] Morris used the Fawcett Pit as the source for the aggregate material to fulfill the subcontract. However, once production began at the Fawcett Pit, Morris was unable to produce the required aggregate due to clay seams running throughout the material. These clay seams were not indicated on the pit data supplied by DOT. Morris contacted DOT and several options were discussed. Eventually, after Morris was still unable to produce the needed material, DOT agreed with Morris that the required material was not in the pit. DOT and Morris then entered into a construction change order whereby DOT agreed to haul in add rock from another source to blend with the Fawcett Pit material in an attempt to meet project specifications.
[Â¶6] It was later learned that the pit data provided by DOT was from pit borings conducted on October 10, 1985, approximately ten years prior to the bid letting on the Ree Heights project. It was also learned that DOT had not visited the pit site since the 1985 pit borings. In fact, the aggregate material identified in the pit data furnished by DOT had been removed by third parties sometime between the 1985 pit borings and the 1994 bid letting.
[Â¶7] DOT compensated Morris for the additional haul under the construction change order, however, it would not compensate for the delays and extra costs incurred when trying to obtain the necessary material from the Fawcett Pit. Morris filed an administrative claim for additional compensation. DOT denied the claim. Morris then filed suit in circuit court on November 1, 1996. Both parties moved for summary judgment, which the trial court awarded in favor of DOT.
STANDARD OF REVIEW 
[Â¶8] "In reviewing a grant ... of summary judgment ... we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." Specialty Mills, Inc. v. Citizens State Bank, 1997 SD 7, Â¶7, 558 NW2d 617, 620. "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." Lamp v. First Nat'l Bank of Garretson, 496 NW2d 581, 583 (SD 1993) (citations omitted). The movant has the burden of proof to clearly show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. State, Dep't of Revenue v. Thiewes, 448 NW2d 1, 2 (SD 1989). "If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." Garrett v. BankWest, Inc., 459 NW2d 833, 837 (SD 1990). Contract interpretation is reviewed de novo as a question of law. State Farm Mut. Auto. Ins. Co. v. Vostad, 520 NW2d 273, 275 (SD 1994).
DECISION 
[Â¶9] Whether a genuine issue of material fact exists supporting Morris' claim that DOT, by concealment or false statements, misrepresented material facts regarding the Fawcett Pit so as to give rise to an implied warranty of accuracy.
[Â¶10] In Mooney's, Inc. v. SD Dept of Transp., 482 NW2d 43, 46 (SD 1992), this Court provided the general rule with regard to a claim against the government for an implied warranty of accuracy.


[C]ourts have universally applied a rule first expounded in a line of Supreme Court cases. The rule provides that the government is not liable to a contractor for breach of an implied warranty unless it misrepresents material facts through concealment or false statements. In essence, this rule established that no implied warranty will arise when the government, in good faith, presents all the information it has on subsurface conditions to the contractor.
Mooney's, 482 NW2d at 46 (emphasis added) (internal citations omitted) (quoting Midwest Dredging Co. v. McAninch Corp., 424 NW2d 216, 221 (Iowa 1988)). In other words, "the government is liable to the contractor when it makes positive statements of material facts concerning the nature of the work in question, when those facts are false." Robert E. McKee, Inc. v. City of Atlanta, 414 FSupp 957, 959 (NDGa 1976) (citing United States v. Spearin, 248 US 132, 39 SCt 59, 63 LEd 166 (1918); Christie v. United States, 237 US 234, 35 SCt 565, 59 LEd 933 (1915); Hollerbach v. United States, 233 US 165, 34 SCt 553, 58 LEd 898 (1914)). Moreover, "'[G]eneral exculpatory clauses which disclaim any responsibility for the accuracy of that data have been held to be of no effect when the positive specifications made by the government were obviously intended to be used by the bidding contractors in formulating their bids.'" Midwest Dredging Co., 424 NW2d at 222 (quoting McKee, 414 FSupp at 959 (citing Hollerbach, 233 US at 172, 34 SCt at 556, 58 LEd at 901)). "[A]bsent a disclaimer specifically disclaiming responsibility for the contested information, general disclaimers will not absolve defendant for positive and material representations upon which the contractor had a right to rely." Western States Mech. Contractors, Inc. v. Sandia Corp., 798 P2d 1062, 1065 (NMApp 1990) (emphasis in original). See also Midwest Dredging Co., 424 NW2d at 222; Tonkin Constr. Co. v. County of Humboldt, 233 CalRptr 587, 590 (CalApp1stDist 1987); Jack B. Parson Constr. Co. v. State, 725 P2d 614, 617 (Utah 1986). The reason for holding the government liable for certain material misrepresentations is simple:


Certain jobsite investigations are not expected to be performed by each and every bidder; rather, the government performs certain basic tests in order to provide each bidder with some information on which he may make his bid. If every bidder were required to perform all the investigations, even though the chance of receiving the bid was remote, the number of bids would decrease and the dollar amount of the bids would increase.
McKee, 414 FSupp at 959. See also Western States Mech. Contractors, 798 P2d at 1065.
[Â¶11] In the present case, DOT provided a package of bidding materials to contractors on the Ree Heights project regarding pit data that was ten years old. The tested material had been removed from the site long ago. Moreover, the most recent option to purchase material was obtained by DOT from the landowner in July 11, 1994, at a time subsequent to removal of the material represented to be covered by this option. There is no doubt the information supplied regarding the Fawcett Pit was inaccurate and was relied upon to make the quote involved in the contract. See Western States Mech. Contractors Inc., 798 P2d at 1065.
[Â¶12] DOT provides this package of information knowing that contractors rely on the information in computing their bids. The record contains the sworn testimony of Randall Hoscheid, an engineer who frequently contracts with DOT, who testified that DOT provides the data to represent what is in the pit. (fn2)  DOT expects bidders to base their quotes on this information. Through providing a source for aggregates, the State hopes to encourage competition between contractors, which, in turn, results in lower bids. (fn3)  Further, when pit data is included, the contractor would expect that the data provided is accurate. (fn4)  This information is provided to prospective bidders for their reliance in preparing their bids. (fn5) 
[Â¶13] The Utah Supreme Court, in a similar case dealing with presentation of stale data-- nine years old, determined that responsibility for the accuracy of bidding information should be attributable to the state, as the party best suited to determine whether the information is accurate. Jack B. Parsons Constr. Co., 725 P2d at 617. The court stated:


Permitting a bidder to rely upon affirmative statements will place responsibility for the accuracy of bidding information on the party best suited to determine whether it is misleading--the state. It also obviates the necessity for bidders to pad their bids to protect against unexpected costs that may be incurred as a result of carelessly prepared plans and specifications. On the other hand, the rule urged upon us by UDOT can only be expected to encourage sloppy work by those preparing plans and specifications and to increase the cost of state projects, for no better reason than to relieve the state's employees of any duty to be accurate in representing facts known to them.
Jack B. Parsons Constr. Co., 725 P2d at 617.
[Â¶14] DOT furnishes pit data to assure bidders a source for the aggregates and to avoid the cost of the borings. This, in turn, results in lower bids. The evidence establishes DOT failed to do even minimal investigation as to the information it was providing to bidders and, in fact, provided data that was ten years old. While DOT argues the general disclaimer included in the package of bidding materials absolves liability, as stated above, general disclaimers are of no effect when the government makes material misrepresentations. McKee, 414 FSupp at 959; Hollerbach, 233 US at 172, 34 SCt at 553, 58 LEd at 901. Therefore, considering all of the above, the evidence in this record creates a question of whether DOT acted in good faith by incorporating this stale data into the bid package. This creates an issue of fact for the jury and precludes summary judgment.
[Â¶15] Reversed and remanded for trial.
[Â¶16] SABERS, KONENKAMP and GILBERTSON, Justices, and LOVRIEN, Circuit Judge, concur.
[Â¶17] LOVRIEN, Circuit Judge, sitting for MILLER, Chief Justice, disqualified. 
Footnotes
1.  The disclaimer stated:


The information covering the pit for the project is given to you for informational purposes only. The Department of Transportation does not guarantee the quantity or quality of the material listed in the above information. Interested Contractors should investigate the area before considering it for bidding purposes. 
2.  Q: And the reason that's provided is so that the state, by furnishing this pit data, expects that bidders will rely on this data and they won't have to go out and do their independent borings, correct? â¦Based on your experience?


A: Yes, they provide the data to represent what's in the pit. 
3.  And by doing that they--the state expects to get lower bids?


[objection omitted]
A: That's ... yeah.
Q: That's the purpose, right?
A: To keep someone from tying up all the pits in the project area and controlling then the price of the work.
Q: And so that's why the state furnishes pit data to prospective bidders, correct?


[objection omitted]
A: That's correct.
Q: And historical justification for the state's providing--doing all of the costs of the boring and preparing all of this pit data for projects, was to prevent some supplier from tying up all of the sources and having monopolistic position on the bidding process, correct?
[objection omitted]
A: That's the general principal. 
4.  Q: But if [pit data is] included, such as in this Hand County project, Hoscheid Exhibit 1, you would expect that that data, pit data is accurate and it truly represents the material in the pit?


[objection omitted]
A: Yes. You would still expect the DOT does accurate work, I mean.
Q: The borings are accurate?
A: Yeah, I would suspect the borings and layout and gradations.
Q: To be accurate?
A: To be accurate, yes. 
5.  Q: And again this information is provided to prospective bidders for their reliance in preparing their bids?


A: Yes.